THOMPSON, J.
 

 This is a suit between two reputable members' of the bar, and grows out of a disagreement as to the compensation which the plaintiff was to receive for professional services rendered in the litigation over the estate of the late Mrs. Florence A. Toombs.
 

 It will be necessary to a proper understanding and correct solution of the present controversy to restate some of the history of the litigation referred to, though a full account thereof will be found in the case of Beattie v. Dimitry, 162 La. 571, 110 So. 759.
 

 Mrs. Toombs died about January 7, 1921, without forced heirs and leaving a considerable estate, consisting of movable and immovable property, situated in Caddo parish. Shortly after the death of Mrs. Toombs, Mrs. Marion Beattie presented and caused to be probated what purported to be an olographic will of Mrs. Toombs, in which Mrs. Beattie was- named universal legatee and appointed executrix.
 

 Quite a large number of persons, residing principally in Arkansas and Tennessee, represented themselves to be the legal heirs of Mrs. Toombs and entitled to inherit her estate in the event the will was not valid.
 

 These heirs employed the defendant Dimitry to represent them on a contingent fee basis; that is to say, Dimitry, for his professional services, was to receive one-half of all property or money he recovered out of the estate for the heirs, and was to assume and pay all cost and expenses incurred in recovering the property.
 

 Mrs. Beattie, the executrix, caused certain property belonging to the estate to be sold to pay debts and to discharge a special legacy contained in the will, after which she filed a final account.
 

 In opposition to this account, Dimitry, on behalf of the heirs, set up the nullity of the will on the ground that it was not written, dated, and signed by Mrs. Toombs. Thereafter negotiations were entered into between Dimitry and the attorneys for Mrs. Beattie, looking toward a compromise, and which finally resulted in an agreement by which
 
 *265
 
 Mrs. Beattie was to pay the heirs $50,000 in consideration of their renouncing all interest in the estate. The agreement failed by reason of the fact that Mrs. Beattie could not raise the money.
 

 Thereupon an agreement was consummated in which Mrs. Beattie renounced all rights to the estate of Sirs. Toombs under the will and resigned the trust as executrix, and purchased all of the real estate for the sum of $50,000, represented by one note, payable in six months and secured by a mortgage on the property.
 

 The mortgage note for $50,000 was negotiated by Dimitry with one Charles Schneidau for $25,000 cash and the latter’s personal note for $2.3,000.
 

 A petition was then filed by Mr. Dimitry, in which it was alleged that Mrs. Beattie had renounced all rights under the will and had resigned as executrix, and asked that the heirs be sent into possession of the estate. Whereupon Mrs. Beattie caused to be recorded a revocation of her renunciation, and filed a rule against the heirs to have the judgment sending them into possession set aside.
 

 A trial of this rule resulted in a judgment setting aside the order putting the heirs in possession.
 

 About this time Mrs. Beattie changed counsel, and, through new counsel, filed a suit against Dimitry in which it was alleged that Dimitry, Barnett, and Harrington had entered into a conspiracy to defraud her, and had obtained her signature to the renunciation and to the mortgage and note for $50,000 by threatening to prosecute her for having forged the will of Mrs. Toombs. She prayed that the renunciation, notes, deed, and mortgage be canceled, and for $10,000 damages caused by the fraudulent conspiracy between Dimitry, Harrington, and Barnett.
 

 In answer to this suit, Dimitry, on behalf of himself and the heirs, and the other two counsel on their own behalf, denied the charges of conspiracy, and prayed that the suit be dismissed. It was again charged by Dimitry that the purported will was not written by Mrs. Toombs.
 

 The record shows that up to this time numerous suits, motions, exceptions, and pleas had been filed in connection with the succession of Mrs. Toombs, and that Dimitry alone represented the heirs, except such assistance as was rendered by the attorney who had been appointed to represent absent heirs.
 

 Some time in the month of April, 1925, Dimitry employed the plaintiff, Garland, to bring suit in his behalf against Joseph H. Levy and Clifton Davis for slander, growing out of the suit filed by them on 'behalf of Mrs. Beattie, charging Dimitry and others with conspiring to defraud her. Later Dimitry associated Garland with him in the suit brought by Mrs. Beattie to set aside the compromise or settlement made with the heirs.
 

 Thereafter-Garland assumed the position of leading,counsel, and practically controlled the management of the case, though the real issues had been formed, the foundation laid, and practically all of the evidence had been secured by Dimitry before Garland’s entry into the case.
 

 At the time of Garland’s employment, the controversy between Mrs. Beattie and the heirs of Mrs. Toombs had been resolved into two vital questions: First, the validity of the transaction by which Mrs. Beattie had renounced her rights under the will, and the purchase by her of the property at $50,000; and, second, the genuineness of the will under which Mrs. Beattie claimed.
 

 In connection with that case, the plaintiff, Garland, was also employed by Schneidau, who became a party to the suit as holder of the note for $5(1,000, which was sought by Mrs. Beattie to have decreed null.
 

 It was perfectly obvious at that time that, if the compromise was maintained, the heirs of Mrs. Toombs would realize nothing but
 
 *267
 
 tlje proceeds of the $50,000 note negotiated by Dimitry with Schneidau. On the other hand, if the compromise was set aside and the will was annulled, then the heirs would receive the entire estate.
 

 The trial of the case was had before a jury, beginning November 16, 1925, and ending February 13, 1936, with a verdict setting aside the renunciation made by Mrs. Beattie and annulling the note and mortgage which she had executed in favor of the heirs of Mrs. Toombs for $50,000.
 

 There was also a verdict in favor of the defendants, declaring the will to be a forgery. The verdict was approved by the trial judge, and on appeal to this court the verdict and judgment were affirmed, and the heirs of Mrs. Toombs were sent into possession of the estate.
 

 While the cases were pending in this court, and before final submission, the present suit was filed.
 

 The plaintiff contends that under a verbal contract with Dimitry, made at the time he was employed, he was to receive one-half of the net amount received by Dimitry from the heirs. On the other hand, defendant Dimitry claims that there was never any agreement as to fees until January 5, 1926, when, at the instance and insistence of Garland, he signed the letter addressed to Garland, which we shall refer to later, and which Dimitry claims constitutes the only contract with reference to the fee made by him with Garland.
 

 It will be observed that the original petition alleged on a definite contract of employment at a fixed fee of 50 per cent, of what Dimitry received, less the actual cost and expense paid out by him; but by an amended or supplemental petition it was alleged, in the alternative, that, if it should be found that there wras no contract, then the plaintiff should recover on a quantum meruit.
 

 A large part of the voluminous record is taken up with evidence introduced on the alternative demand, going to show the extent, nature, and value of the plaintiff’s services, all of which, of course, can have no particular bearing, if there was a contract fixing the amount or the interest of the plaintiff in the amount recovered by Dimitry under his contract with the heirs.
 

 It may be assumed, and we think it very properly so, that the services rendered by Carland were very valuable to Dimitry and to the heirs, and fully justified his employment in the case; but, as we have stated, it matters not how much his services may be worth, and how much labor he may have performed in handling the case, he is not entitled to receive more than his contract provided for, if so' be it that he had a contract.
 

 Upon that issue vel non, we have only the testimony of the two parties themselves, except such corroborating circumstances as may appear from the record.
 

 The plaintiff’s version is that he resigned as assistant attorney for the Standard Oil Company on April 1, 1925; that shortly thereafter he met Mr. Dimitry, who spoke about bringing suit against attorneys Levy & Davis for damages for libel, and asked him (Garland) if he would represent him and the heirs of Mrs. Toombs, and take active charge of the defense of the suit of Mrs. Beattie v. Dimitry; that he told Dimitry that he could not then give him an answer, as he would have to make an investigation of the will; that he made the investigation, concluded the will was a forgery, and so told Dimitry, and that he would accept the employment ; that he knew what Dimitry’s contract with the heirs was, and that Dimitry agreed to give him one-half of the net fee; that he told Dimitry that he would do the legal work, but would not be out any money, and that he (Dimitry) would have to bear the expenses in connection with the suit; that he would handle the matter, and do the legal
 
 *269
 
 work, for one-half of the net fee, and that this was satisfactory to Dimitry.
 

 Mr. Dimitry testified as follows: That he first employed Mr. Garland to represent him in his suit against Levy et al., and incidentally to assist him in representing the heirs under his contract with them; that he met Mr. Garland in front of the Oity Bank Building, and, after a general discussion, that Garland told him that he was about to leave the employ of the Standard Oil Company and open up an office for himself; that later he told Garland about his proposed suit against Levy & Davis, and asked him if he wanted ■to undertake it; that Garland said, “Sure,” and a few days thereafter'presented a petition which he had drawn; that this suit was filed, and later on he engaged Garland to collect some notes due by HofEert, approximately $5,000, and that Garland was to get the stipulated fee of 10 per cent.; that, shortly after the Hoffert matter had been taken over by Garland, he came into Dimitry’s office and asked him when he was going to take him into the big case, meaning the case of Mrs. Beattie v. Dimitry et al.; that he told him in two or three days, and that something developed, and they went into the “big case”; that there was nothing of importance to do in the case and no pleadings to be filed; that he told Garland that the case had been fully prepared, and that he (Dimitry) had gone to large expense; that there was ño discussion at any time, until shortly afterwards, as to the question of compensation; that later on Garland asked him what he was going to get out of the case, and that he told him that the expenses were very large, and that he did not know whether he was going to get anything himself, or what he would get, but that he approximated that Garland would get $4,000; that some time afterwards Garland approached him again on the subject, and said all that he wanted to get out of the ease was enough to show Judge Milling that he could make in one case what he could make working for him for one year; that he then said to Garland, “I don’t think there is any doubt about it that you will be able to get that;” that there was no agreement whatever as to the amount of fee until January 5, 1926; that the case went to trial about the middle of November, and continued until late in the evening of January 5th, when Garland sent for him to come to his office; that he sat down to the typewriter and wrote a contract, and picked it out and threw it out on the table, and said, “I want you to sign this;” that 'it had been entirely composed and typewritten by Garland, and was a letter addressed to him, which Dimitry was to sign; that he told Garland that was not his understanding, but that Garland said, “You are going to sign this, or I am going to get out of the ease, and you will have to pay me $3,000;” that Dimitry told him, “You are certainly not going to get out of the case in the midst of a trial of this kind,” and that Garland said, “I certainly am;” that he protested vigorously against signing the letter, but finally did so; that Garland frequently referred to the letter as the written contract between them, and said that he was going to hold Dimitry to it.
 

 After the letter of January 5th was signed, - Garland proceeded with the trial of the case, and the question of fee was not again discussed until after the verdict of the jury, when Garland stated to Dimitry that the letter of January 5th was based on the recovery on the note of $50,000, and that his fee would be $25,000, but that, as the verdict of the jury had declared the note invalid and the will a forgery, the heirs would get property worth $80,000, and that Dimitry’s fee would be increased accordingly, and that he (Garland) would insist on half of his fee, less the costs and expenses. To all of which Dimitry replied that he was going to give Garland but $6,000, in accordance with the letter.
 

 The letter dated January 5, 1926; referred to as the written contract, reads as follows:
 

 
 *271
 
 “Confirming my yerbal agreement with you, when I associated you with me as attorney for the heirs of Mrs. Florence A. Toombs and myself in the case entitled Mrs. Marion Beattie et al. v. M. D. Dimitry et al., No. 37,509, First Judicial District Court, Caddo Parish, Louisiana, I wish to advise that you are to receive in consideration of your legal services six thousand dollars ($6000.00) of the fee which I am to receive from the heirs of Mrs. Florence A. Toombs; and I hereby authorize - Charles Schneidau, whose note I hold for the sum of $25,000.00, to pay you such sum and I will credit such payment on said note of $25,000:00.
 

 “I had planned to pay Edward Barnett, Shreveport, Louisiana, the sum of four thousand dollars ($4,000.00), but, if I do not make such payment to him because of his failure to perform his part of our agreement and to faithfully represent the heirs of -Mrs. Florence A. Toombs, you are to receive one-half of such sum of four thousand dollars ($4,000.00) in addition to the above mentioned six thousand dollars ($6,000.00).
 

 “I had planned to pay J. M. Brice, Dewitt, Arkansas, the sum of three thousand ($3,000.-00) but, if I do not make such payment to him because of his failure to perform his part of our agreement and to faithfully represent the heirs of Mrs. Florence A. Toombs, or because he obtained such agreement from me by falsely representing that he was the attorney for Mrs. Sallie Davis, a sister of Mrs. Florence Toombs, you are to receive one-half of such three thousand dollars ($3,000.00) in addition to the above mentioned sum of six thousand dollars ($6,000.00) and also in addition to the above mentioned one-half of four thousand ($4,000.-00).
 

 “Should I pay either Edward Barnett or J. M. Brice any amounts less than the above mentioned four thousand dollars ($4,000.00) and three thousand dollars ($3,000.00) you are to receive one-half of the difference between the said sums and the amount paid them.
 

 “Yours very truly,
 

 “(Signed] M. D. Dimitry.”
 

 Whatever may have been the contract between Garland and Dimitry prior to this letter, or whether there had been any contract at all, we regard the letter as definitely fixing the compensation Garland was to receive for his services at $6,000, with an additional amount of $3,500 in the event Dimitry did not have to pay Barnett and Brice the amounts referred to in the letter.
 

 There had been, prior to the letter, a controversy over the fee; Garland insisting that a contract had been made and Dimitry denying that any amount had been agreed on.
 

 Garland insisted on putting the evidence of the contract in writing and threatening to quit the case if it was not done. He wrote' the letter himself, and presented it to Dimitry to be signed, and, after it was signed, he took charge of it and proceeded with the' case.
 

 On page 266 of the transcript, Garland testified that the letter was composed and written by him on the typewriter and signed by Dimitry, and was addressed to him (Garland) as
 
 evidence
 
 of the verbal agreement, in accordance with his insistence, and that he continued after that with the work. And on page 267 of the transcript he again said:
 

 “On January 5, 1926, when Mr. Dimitry told me he refused to give me
 
 any■ written evidence of our verbal contract,
 
 I then told him I would not-go on with the case unless he did sign the letter, and he signed it.”
 

 The plaintiff attempts to avoid the effect of this letter,, after admitting that it was obtained as
 
 evidence
 
 of his contract with defendant, by saying that it was based on the supposition that the recovery for the heirs would not be greater than the note for $50,-000; but in this he is supported only by his own testimony. He is contradicted by the testimony of the defendant and by the instrument itself, which in the very beginning declares that:
 

 “Confirming my verbal agreement with you,' when I associated you with me as attorney for the heirs of Mrs. Toombs and myself in the case entitled Mrs. Marion Beattie et al. v. M. D. Dimitry et al., I wish to advise,” etc.
 

 Then follows the unconditional obligation on the part of Dimitry to pay Garland $6,000 of the fee which he was to receive from the heirs, with the obligation to pay an additional $3,500 in the event Dimitry did not have to settle with Barnett and Brice.
 

 As before noted, this document was pre
 
 *273
 
 pared by Garland as evidence of the verbal contract he had with Dimitry, was accepted by him, and his services thereafter were continued under the terms of said letter. It will not do, under such Circumstances, to argue that the document was a mere memorandum and without any binding effect on the plaintiff, who prepared it, who accepted it, and who acted on it, so he says himself, as evidence of a verbal contract.
 

 At the time the letter referred to was pre: pared and signed, the case was on trial, and the plaintiff and defendant were well aware of the chances of annulling the will and recovering the entire estate for the heirs. There was, therefore, no reason for basing the fee on what the heirs already had coming to them under their agreement with Mrs. Beattie, and of fixing a definite sum to be paid Garland, if there had been, as Garland claims, a verbal contract by which he was to receive one-half of whatever Dimitry recovered, less cost and expenses paid by him.
 

 It can hardly be doubted that, if the litigation had gone the other way, Garland would have insisted on Dimitry paying him the amount stipulated in the letter, regardless of any further expense and cost Dimitry had been put to, and he would have had the legal right to do so.
 

 I-Ie is not in position, therefore, to urge that he was not bound by the contract.
 

 It is a well-recognized principle of law that parties are presumed to embody in their written contracts all that was said prior thereto, at the time, and subsequent to the signing of such contracts, in relation to the subject-matter thereof, and neither party is permitted to show that the contract was. other than as written, except on proper allegations of error, fraud, or mistake, supported by convincing proof.
 

 No such allegations are made in this case, and the plaintiff’s testimony, which was received over the defendant’s objections, is not sufficient to destroy the written contract.
 

 The language of the letter is plain, simple, and unambiguous, and we cannot perceive how it can be construed to refer to such a contract as claimed by plaintiff.
 

 It is, on its face, plainly inconsistent with the plaintiff’s contention. It expressly confirms “my verbal contract,” the contract made by Dimitry at the time he employed plaintiff, and in no sense refers to a contract which Dimitry had consistently and persistently denied and protested that he never made.
 

 It follows, from what we have said, that the judgment appealed from will have to be altered and amended.
 

 Dor reasons assigned, it is ordered and decreed that the judgment appealed from, in so far as it awards the plaintiff one-half of the amount receivable by the defendant under the contracts entered into by him with the heirs of Mrs. Toombs, subject to reimbursement to the said -Dimitry of all costs and expenses legitimately incurred and paid by him, and in so far as said judgment requires or directs said Dimitry to render an account of the costs and expenses legitimately incurred and paid by him, be and the same is hereby reversed and set aside, and it is now ordered and decreed that .the plaintiff, Garland, have judgment against Dimitry for the sum of $6,000, with the right reserved to said Garland to sue said Dimitry for one-half of the $4,000 which said Dimitry may not have paid, or become liable to pay, to Edward Barnett, and one-half of $3,000 which said Dimitry may not have paid, or become liable to pay, to J. M. Brice, as stipulated in the letter of January 5, 1926.
 

 In all other respects the judgment is affirmed, the plaintiff to pay the cost of this appeal.
 

 O’NIELL, O. J., takes no part.